Good morning, Your Honors, and may it please the Court, my name is Mark Ebert and I represent Mr. Andrew Kuhn. And I would like to save a few minutes of my time for rebuttal. First, I'd like to address the issue of the guideline calculation, including the four points for one sadistic video, which was among about 900 images or videos found on Mr. Kuhn's laptop. The Fifth and Eleventh Circuits have held that this enhancement requires a showing of knowledge and intent. And this Court in Rearden and subsequent cases has declined to reach the issue. And the most recent of the Circuit's cases declining to reach this issue was United States v. Grigsby, a 2012 case of Judge Ward laws. The trial court in this case believed, and I agree that this should be the result, that there had to be a knowing possession of the single sadistic video. And in this case, there's been an insufficient showing of knowledge and intent on the part of Mr. Kuhn. Counsel, did you object to the PSR findings that he had accessed that video and it had not been deleted, but he had actually stored it in his documents? Actually, the – I wasn't the trial counsel, first of all, let me say that. All right. But secondly, the – there was no – I'm sorry, the first question is that he had access. So the question is knowledge, we all agree, right?  Well, he downloaded it and he stored it in a file called My Docs. What was not disputed was that – was that he downloaded it. There were other people that used his computer, and it was disputed whether he knew that it was a sadistic video for a number of reasons. You know, one is that he didn't remember it, and that is certainly relevant to whether or not he did it, although not conclusive. Secondly, he downloaded it from a site called LimeWire, which you can't tell until you download it – until you open it what it is that you're downloading. This is one of only 900 – this is only one of 900 images and videos on the computer that has any sadistic content. And I would say that that, in and of itself, is indicative of lack of knowledge. Does LimeWire download it directly to My Docs, or do we have to consciously move it? I don't know the answer to that, although, at least on my computer, whatever I did last time is where it's going to download it this time. But I'm not an expert in that, and I don't recall that being asked on the – Because My Docs is a subset of other things. I'm not a computer expert, and I've never used LimeWire, but if you're downloading off of LimeWire, my guess is it just goes to some hard drive someplace and then has to be moved someplace into a category that you want it moved to. All I can say is from my experience, and I'm not a computer expert either, where I download things to is usually the same place every time. But you see, what I'm saying is that where you download it doesn't mean you know what's on it. If you get it off of a – download it from a website that doesn't tell you what it is. If you download it and then you consciously move it someplace, do you intend to keep it? Again, if you don't know what the content is, maybe you just move it to where all your other child pornography is. But you intend to keep it. Does this depend on whether or not he's opened the file? Does the government have to show that he opened it? What the government has to show is that he knew, that he had knowledge and intent. And what the district court – first of all, the government didn't even try to prove that. The government was taking the position that that four points did not apply. Secondly, the district court said, and this is at 2 E.R. 56 to 57, that we have no evidence that he didn't know, and that was at the final hearing where the judge made his rulings. And that's not the standard. The standard is whether the government has been able to prove that he did know. And, you know, I would think that it would be hard for anybody to download 900 images of the Eiffel Tower and not get something on there that he didn't expect or didn't intend. It's also undisputed, of course, that he was high on illegal drugs at the time that he downloaded them, that, as I said, he downloaded them from a website that didn't indicate what it was. That it was not accessed for the two months after it was downloaded until the government seized the video. And it was the government that accessed it then. And as far as – So the government was – because the government recommended a sentence much lower than the PSVSR. Yes. Who found the sadistic image? The government indicated – the government apparently told the probation office, first the prosecutor and then it was verified by one of the agents, said, yes, there is one video out of all of these many images, hundreds of images, that has sadistic content. And my read on that – and, of course, we do have the actual prosecutor here. But my read on that is that if they knew it at the time they entered into this agreement, which was to not apply this four-level enhancement, that that's indicative as well. All of the governments believe that this enhancement should not apply. As far as access – I'm wondering if saving in My Documents is just automatic. Because you have to save it somewhere. Well, yeah. It has to be somewhere, right? You have to save it somewhere even if you don't know other than the title on LimeWay or, you know, what the content is. If you're going to download it. I'm just trying to think about – I mean, my only experience is with photographs that I've taken. They go into My Docs. Yeah. My experience – again, this was not discussed at the trial court. My experience is that when you don't – when I download things, they tend to go to wherever I last downloaded things. But even if he chose My Docs, that doesn't mean that he knew there was sadistic content on there. He probably – he could have just as easily thought that it's child pornography like the 900 other images that were not sadistic, you know, on his computer. I know you want to reserve some time. So the district court did exercise discretion to depart somewhat, didn't it? It did depart three months below the bottom of the guideline range that it found, which was higher than what the government believed was applicable, which is obviously higher than what the defense found was applicable. And I will also point out that the defense counsel said in his argument that other people did use his computer, and he did not make the contention that somebody else downloaded this. However, I would point out that regardless of whether he downloaded this, that doesn't show, if other people used his computer, that he accessed it, even if he didn't access it for even more than a second. And, again, that wasn't shown. And I do want to save a couple of minutes, if that's okay. Any other questions? That's fine. Would you please remove the telephone? It's not mine. No, I know it's not yours. I know whose it is. Please remove the telephone. I know it's not yours. Don't worry. Whoever has that telephone. Okay. All right. United States. Good morning, Your Honors. My name is Ann Perry, and I represent the United States in this case, and I was the prosecutor. I did recommend 46 months based on what I knew about Mr. Kuhn and his involvement in the case that actually led to this. As this Court is aware, everybody has a part to play in a sentencing proceeding, particularly since the guidelines are no longer mandatory. And in this case, I made a recommendation. The Court disagreed with that recommendation. The defense attorney had a recommendation, and the Court was concerned about the one video. Decisions of this Court have allowed that one image of a sadistic nature can result in a four-level increase, and I have cited to that in our brief. Don't you? I mean, are we alone? I mean, do the other circuits all require a showing of knowledge and we don't require a showing of knowledge? Actually, that's interesting that you would mention that, Your Honor, because one circuit does for certain, and I noted that in United States v. Perez, which is out of the Fifth Circuit, and I believe it was cited by the appellant, the standard of knowing was either knowing or reckless disregard. So that was a standard that was enunciated there, and other districts really have not addressed the issue to this point. I should say other circuits. And in this case, Your Honors, the burden that should have been shown by the government as to this issue was, I think, met because the district court asked that a subsequent hearing be held and that contact be made with the individual who actually analyzed Mr. Kuhn's computer. And if the Court looks at ER 789, it was found first that he had downloaded child pornography. The defendant, Mr. Kuhn, did concede that he was downloading it, and then evidence from the computer examiner, first, that there was downloaded, and also that this particular file at ER 7 was viewed. So whether he looked at it for five minutes, five seconds. But do we know whether he viewed it or someone else viewed it? The evidence before the district court was more than a preponderance, that it was Mr. Kuhn that was viewing it. He did indicate at the sentencing that other people had it, but he was the one who took responsibility for the child pornography that was on his computer. The guideline says that the four-level enhancement applies if the offense involves a sadistic image. And that hasn't been particularly dealt with with that basic language. But I would suggest respectfully to the Court that, first of all, the evidence showed first that it was his computer, he downloaded it, according to the expert. The file was viewed. At ER 9, the defendant conceded that he viewed this file, but he didn't remember it due to his drug usage. And I think that that's a we can't help the fact that he was able to. I'm sorry. What's the reference to where he admitted? I believe it's ER 9, Your Honor. I believe the concession was made through counsel. I'd also note for the record that there was a lot of debate in the moving papers and also our responsive papers as to whether the district court had considered additionally the one-level departure that was asked for, for combination of circumstances. At ER 22, the court did say, I think it can be read, that the court did consider that minus one because he talked about, the district court talked about the defendant getting three points for acceptance of responsibility. Defense counsel had mentioned the minus one, and he said, well, he's got four points credit. The district court didn't agree with these calculations, clearly. But as the court has probably figured out from the calculations that were made, the sentence that was imposed was ultimately 60 months. Had the district court followed the recommendation as set forth by the government in its briefing, that was a range of 46 to 57 months. And so we're here because of three months. Unless the court has any further questions, I'd submit. All right. Thank you very much. Thank you, Your Honors. The one thing I would like at the get-go to respond to is the government's understanding that Mr. Kuhn admitted viewing the video. That is not correct, and I'm trying to find the site. But what he admitted was that he saw some video that was ugly and terrible and turned it off, but he did not recall seeing that particular video or any video that was specifically sadistic in nature. And the trial court accepted that. And, in fact, I would say that that's its acceptance and said several times that I don't disagree with that, I don't doubt that. I would say that that's a finding of fact by the trial court. As to what he saw that he considered ugly, well, there were 900 images of child pornography on that computer, and there's no way to say what he found ugly about those. I imagine that most people would find all of them ugly. But there was no admission, and that's very important, there was no admission by him of viewing this. He didn't remember this video or any video that was specifically sadistic in content. And, you know, if this man deliberately downloaded sadistic videos of this type, he would expect there to be more than one out of the 900 images and videos on his computer that was of that type. As for the one point, actually, there was a — whether there was a passing reference by defense counsel to three or four or not, the district court and the probation office in the PSR never referenced that, that agreed-to one-point deduction for early resolution and other matters at any point. It's not in the PSR. It wasn't referred to by the judge at Senneson. And finally, I don't agree that the burden of proof was met because it was the government's burden of proof, and the government never even tried. They agreed that the four points, specifically agreed that the four points didn't apply, and they never at any point throughout this sentencing, series of sentencing hearings, argued otherwise. And I'm just out of time unless the Court has more questions. All right. Thank you very much, Michael. U.S. v. CUNY is submitted, and we'll take up U.S. v. Flores.
judges: Fletcher, Wardlaw, Bybee